605 So.2d 908 (1992)
STATE FARM LIFE INSURANCE COMPANY, a foreign corporation, and Nancy E. Tallarico, Appellants,
v.
Elvira BASS, individually and as Personal Representative of the Estate of Randelle J. Huggins, Deceased, Appellee.
Nos. 91-818, 91-1612.
District Court of Appeal of Florida, Third District.
September 8, 1992.
Rehearing Denied October 27, 1992.
Barnett, Clark and Barnard, and James K. Clark, Miami, for appellants.
Joe N. Unger, and Lars Lundeen, Miami, for appellee.
Before BASKIN, GERSTEN and GODERICH, JJ.
*909 PER CURIAM.
The defendants, State Farm Insurance Company [State Farm] and Nancy Tallarico, appeal from a final judgment entered pursuant to a jury verdict in favor of the plaintiff, Elvira Bass, individually and as personal representative of the estate of Randelle J. Huggins. Bass cross-appeals from the trial court's order denying her motion for attorney's fees and costs. We affirm as to both the main appeal and cross-appeal.
On April 27, 1984, Tallarico, a State Farm insurance agent, contacted Bass at the request of a mortgage company in connection with the purchase of a new home by Bass and her son, Huggins. At that time, Bass inquired about purchasing life insurance for herself and her son. Tallarico accepted an application from Bass, who had a complicated medical history, but did not offer to write a separate policy for Huggins, the son, who was in good health. Bass paid no premium at the time the application was accepted. As Tallarico left that evening, she told Bass that she would take care of the application.
After speaking with Tallarico on April 27, 1984, Bass was contacted by representatives of two other insurance companies. Bass, however, did not attempt to obtain life insurance from these companies because she had confidence that she and her son had life insurance with State Farm.
Bass supplied additional medical information to State Farm and, at State Farm's request, underwent a medical examination. State Farm, however, did not request any further information from Huggins.
Bass did not hear from Tallarico until August 17, 1984, when Tallarico called her and informed her that the policy was ready and that she would have it delivered to her. On August 24th, Bass called Tallarico since the policy had not been delivered as promised. Tallarico told Bass that she would bring the policy over that evening. During this conversation, Tallarico informed Bass that the policy was to be issued at an increased premium because of her medical condition. Bass was prepared for the increase and had money available to pay the policy that evening. Once again, Tallarico failed to deliver the policy to Bass. On August 31st, Bass called Tallarico, but was not able to get into contact with Tallarico.
On September 10th, Bass called Tallarico and requested that the policy be delivered. Tallarico delivered the policy; however, Huggins had died the day before.
When demand was made on State Farm for the death benefits, State Farm denied coverage on the basis that the insurance application was nonbinding and the application required that an insured be living at the time the policy was delivered. Bass sued State Farm for breach of an oral and written contract to deliver the policy prior to September 9, 1984, the date Huggins died, and for negligence.
Prior to trial, Bass filed an offer of judgment. The offer of judgment stated, in part, that it was "in the amount of $64,000.00 [the policy amount], exclusive of costs and attorney's fees. Costs and attorney's fees would be agreed to or determined by the court at a later date." State Farm and Tallarico did not accept the offer, and therefore, the case proceeded to trial.
At trial, David Goodwin, an insurance agent and consultant, testified as an expert. He testified that from the time the application was originally taken, considering Bass' medical history, Tallarico should have suggested a separate policy for Huggins. If a separate policy had been suggested, it could have been issued, paid for, and promptly delivered while further underwriting investigation continued as to Bass. Also, since Tallarico was technically a trainee insurance agent, it was poor management practice on the part of State Farm to have no supervisor who could have suggested the issuance of separate policies. Next, regarding the telephone communications between Bass and Tallarico in connection with the delivery of the policy, there were definite departures from the normal standard of care in that there was no follow-up system as far as telephone messages were concerned. Lastly, Goodwin testified that State Farm was negligent in failing to notify Bass about the status of her application during the entire underwriting *910 period where weeks and months went by with no communication.
The trial court granted the motion for directed verdict as to the contract claims, but denied the motion as to the negligence claims. The jury found negligence on the part of the defendants and awarded the face amount of the policy, plus prejudgment interest. Final judgment was entered pursuant to the jury verdict.
Bass filed a motion for attorney's fees and costs asking for an award of fees and costs from the date she filed her offer of judgment. The trial court denied the motion on the basis that Bass' offer did not limit attorney's fees, and therefore, failed to have sufficient definiteness as required by rule 1.442, Florida Rules of Civil Procedure. This appeal followed.
State Farm and Tallarico argue that a tort claim cannot arise as a result of an insurer's delay in acting on a nonbinding life insurance application where the application is not accompanied by an initial premium. We disagree.
An insurer who undertakes to obtain an insurance policy owes the proposed insured a duty to act within a reasonable time, regardless if a premium was tendered by the proposed insured. See generally, Sheridan v. Greenberg, 391 So.2d 234 (Fla. 3d DCA 1981). "Reliance by the putative insured on the insurance agent's undertaking, even if that undertaking is gratuitous, is sufficient to trigger a duty upon the agent to exercise the reasonable skill and care to obtain the appropriate coverage." Sheridan, 391 So.2d at 236.
In the instant case, Bass relied on Tallarico's promise that she would take care of the application. In fact, Bass was contacted by representatives of other insurance companies regarding the possibilities of obtaining life insurance; however, Bass did not obtain life insurance from these companies because she was confident that she and Huggins had life insurance with State Farm.
On cross-appeal, Bass contends that the trial court erred in denying her motion for attorney's fees and costs where the offer of judgment complied with Rule 1.442(c)(2), Florida Rules of Civil Procedure. We disagree.
In the instant case, Bass' offer of judgment was for a specific amount plus attorney's fees and costs which were to be determined at a later date by the trial court. Rule 1.442(c)(2), Florida Rules of Civil Procedure, states, in part, that the offer of judgment "shall state the total amount of the offer." Bass' offer does not "state the total amount of the offer" as required by rule 1.442(c)(2). From the face of the offer, it would have been impossible for State Farm and Tallarico to determine the acceptability of the offer where the offer does not state the total amount needed to settle all pending claims. Therefore, the trial court correctly denied Bass' motion for attorney's fees and costs.
Affirmed.